# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| RICHARD A. AWE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> I & M RAIL LINK, L.L.C., <br><br> Defendant. | No. C04-3011-PAZ <br><br><br> **ORDER ON MOTION TO VACATE ARBITRATOR'S DECISION ON UNCONSCIONABILITY** |

In the summer of 2001, the fifteen plaintiffs all were employed by the defendant I & M Rail Link, LLC ("IMRL") as "at will" employees. IMRL owned and operated a rail transportation service throughout various Midwestern states. IMRL was facing a possible change in control or ownership. To induce its employees to remain loyal to the company, in August 2001, IMRL presented the plaintiffs with an Employee Incentive and Severance Agreement (the "Agreement")

Under the Agreement, IMRL promised employees a bonus payment of 5% of their annual salary for remaining employed by IMRL until April 1, 2002. IMRL also promised severance pay[1] for each employee entering into the Agreement if there was a change in ownership of the rail line within two years; and (a) the employee's employment was terminated without good cause, (b) the employee's job was eliminated, or (c) the employee's job was relocated a distance of more than 150 miles from the employee's then-current location and the employee decided not to relocate. Under the terms of the Agreement, the change of ownership of the rail line did not constitute termination or

---

[1] Under section 3.2 of the Agreement, "Severance Pay" was the current base annual salary, less appropriate deductions for state and federal taxes, payable in equal monthly installments, plus payment of COBRA health insurance premiums for up to twelve months. The Agreement also provided that "severance pay will not be considered income, salary or earnings for purposes of the 401(k) plan[.]"

elimination of employment if the employee was "offered continued employment on substantially the same terms and conditions." Section 4.2 of the Agreement was titled "No Enlargement of Employee Rights," and provided that the Agreement "shall not be construed to give [the employee] the right to be retained in the service of I&M or its successors. The [employee]'s employment will remain 'at will.'" All fifteen plaintiffs, as well as a number of other employees of IMRL, signed the Agreement.

On July 26, 2002, the Iowa, Chicago & Eastern Railroad Corporation ("IC&E) completed the purchase of the assets of IMRL and commenced operations. Each of the fifteen plaintiffs was offered new employment by IC&E (or by a related entity), and each accepted the offered employment. The plaintiffs all maintained that the terms and conditions of their new jobs differed substantially from their jobs with IMRL, and all of them requested severance pay under the Agreement, but IMRL denied all of their requests.

A Complaint was filed in this court on January 30, 2004, on behalf of the plaintiffs and "all others similarly situated," asking the court to declare the rights and obligations of the parties under the arbitration provision of the Agreement,[2] and further asking the court to declare that the plaintiffs are entitled to severance pay under the Agreement. The defendant responded by filing a motion to compel arbitration pursuant to the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.* (the "FAA"). The court granted the motion on

---

[2]The Agreement's arbitration clause provides, in full, as follows:
> Any controversy or claim arising out of or relating to this agreement, or its alleged breach, will be settled exclusively and confidentially by final and binding arbitration in accordance with the rules of the American Arbitration Association for resolution of employment disputes. Any arbitration shall be conducted in or near Davenport, Iowa, or in such other place as may be mutually agreed upon by the parties. Within fifteen (15) days after the commencement of the arbitration proceeding, the parties shall either mutually agree on one person to act as arbitrator or an arbitrator shall be selected according to the provisions of the American Arbitration Association. Each party shall bear its own attorneys' fees, costs and expenses and an equal share of the arbitrator's expenses and the administrative fees of arbitration.

2

June 14, 2004, and stayed the case pending arbitration. Since then, the matter has bounced back and forth between the arbitrator and this court. On May 24, 2005, the arbitrator concluded that the arbitration clause in the Agreement, although silent on the issue of class certification, was broad enough to permit the arbitration to proceed on behalf of a class. The defendant appealed this ruling to the court, but asked that the appeal be stayed pending further proceedings before the arbitrator. (The defendant later withdrew this appeal.) On June 23, 2006, the arbitrator denied class certification. The plaintiffs appealed this ruling to the court, but asked to stay the appeal pending further proceedings before the arbitrator. On November 29, 2006, the arbitrator ruled that the arbitration clause in the Agreement was neither unconscionable nor otherwise unenforceable.

On January 2, 2007, the plaintiffs filed a motion to vacate the arbitrator's order on unconscionability. Doc. No. 45. On March 1, 2007, the defendant filed a motion to dismiss this action. Doc. No. 62. The motions both have been resisted. On July 16, 2007, the plaintiff filed a motion for hearing. The motion was granted, and a telephonic hearing was held on August 28, 2007. Brian J. Donahoe appeared for the plaintiffs, and R. Todd Gaffney appeared for the defendant.

In their motion to vacate the arbitrator's order on unconscionability, the plaintiffs raise only one issue.[3] They argue the arbitrator lacked subject matter jurisdiction over this case. They point out that section 1 of the FAA provides, in part, that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The plaintiffs argue the Agreement was a "contract of employment" for "railroad employees," and therefore it is excluded from the coverage of the FAA.

---

[3] At the hearing, counsel for the plaintiffs stated the plaintiffs are not appealing the arbitrator's decision that the arbitration clause was not unconscionable.

The plaintiffs first raised this argument summarily in footnote 1 of their March 23, 2004, brief in opposition to the defendant's motion to compel arbitration. In the footnote, the plaintiffs stated the following:

> Defendant makes every effort to ensure that this contract is not interpreted as an employment contract, as any such contract is not subject to the FAA. See 9 U.S.C. § 1 ("nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). It is arguable that the contract is in fact a contract for employment in the broad sense, and the Supreme Court has identified the purpose of § 1's exception for transportation employment contracts as encouraging the free flow of goods in interstate commerce. See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 121 S. Ct. 1302, 1307, 149 L. Ed. 2d 234 (2001); *Gagnon v. Service Trucking Inc.* 266 F. Supp. 2d 1361, 1366-67 (M.D. Fla. 2003) (finding lease agreements between owner-operators and trucking company to be employment contracts and excepted from FAA under 9 U.S.C. § 1). Initial research failed to locate a case directly addressing the question of whether a retention and severance agreement constitutes a contract for employment under § 1[] of the FAA. Regardless, the support for a finding of unconscionability in this case makes it unnecessary for the Court to rely on § 1.

Doc No. 5, p. 2, n.1. Later in the brief, the plaintiffs arguably waived this argument when they stated as follows:

> The parties . . . dispute whether the agreement is unconscionable or otherwise not a valid contract to arbitrate.2/
>
> > 2/ Again, assuming that the Agreement is not a contract for employment under 9 U.S.C. § 1. *See* n.1, *infra*.
>
> If the Agreement is not unconscionable or otherwise an invalid contract, the Plaintiffs concede that the issues presented appear to be covered under the arbitration clause. "Therefore, the

4

> 'fighting issue' here is . . . 'whether a valid agreement to arbitrate exists between the parties.'"

*Id*. at p. 5 & n.2 (citing *Faber v. Menard, Inc.*, 267 F. Supp. 2d 961, 971-72 (N.D. Iowa 2003), in turn quoting *Owen v. MBPXL Corporation*, 173 F. Supp. 2d 905 (N.D. Iowa 2001) (citation omitted)).

The court ruled on this issue in its order of June 14, 2004, granting the defendant's motion to compel arbitration. In the order, the court held as follows:

> The FAA requires the court to stay a lawsuit that is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," once the court is satisfied such issue is referable to arbitration under a valid agreement to arbitrate. 9 U.S.C. § 3. As the Eighth Circuit has explained, the court's role in determining whether arbitration should be compelled is limited. The court "must determine simply whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001); *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999)). Once the court concludes the parties entered into a valid agreement to arbitrate, "the FAA compels judicial enforcement of the arbitration agreement." *Id*.
>
> However, Section 2 of the FAA places "arbitration agreements upon the same footing as other contracts," making such agreements "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Gannon*, 262 F.3d at 679 (quoting 9 U.S.C. § 2). As a result, the court must look to Iowa contract law to determine whether the Agreement is "valid, irrevocable, and enforceable." The plaintiffs have challenged the arbitration clause on the basis of unconscionability, an issue that must be determined pursuant to Iowa contract law. The court will address this issue below. *The court overrules the plaintiff's argument that the Agreement*

5

> *constitutes a railroad employment contract and is, therefore, excluded from the FAA. The plaintiffs raised the argument only in a footnote, and have made no additional argument and provided no authority that a severance agreement would constitute a railroad employment contract for this purpose.*

Doc. No. 16, p. 6. (emphasis added).

As stated by the plaintiffs in their opposition to the defendant's motion to compel arbitration, the fighting issue in the case at that time was whether the arbitration clause in the Agreement was unconscionable. When they filed this case, the plaintiffs had a firm basis for arguing that it was. *See Faber v. Menard, Inc.*, 267 F. Supp. 2d 961 (N.D. Iowa 2003) (Bennett, C.J.). During the course of the lawsuit, however, *Faber* was reversed by the Eighth Circuit Court of Appeals, significantly dimming the plaintiffs' prospects of success on this argument. *See Faber v. Menard, Inc.*, 367 F.3d 1048 (2004).

Now that arbitration proceedings have been completed, the plaintiffs have shifted their focus to the argument that the arbitrator lacked subject matter jurisdiction over this case. Section 1 of the FAA provides that the Act does not apply to "contracts of employment of . . . railroad employees." The plaintiffs argue that because they were railroad employees, and because the Agreement was a "contract of employment," this dispute is not covered by the FAA. In the absence of the FAA, the arbitration clause in the Agreement likely would not be enforceable. *See* Iowa Code § 679A.1(2)(b) (arbitration clause in a contract between employer and employee is not valid or enforceable); *Pennsylvania Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 811 (Iowa 2002) ("[A] written agreement to arbitrate is not valid when it is part of a contract of adhesion or a contract between an employer and an employee."). The defendant does not dispute that the plaintiffs were railroad employees, but argues strenuously that the Agreement was not a "contract of employment" for purposes of the FAA.

There is no question that the Agreement is a contract. *Cf. Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997) (an arbitration clause, standing alone,

6

can be a contract). The question is whether, for purposes of section 1 of the FAA, the Agreement was an *employment* contract.[4]

The Agreement is titled "Employee Incentive and Severance Agreement.[5] The parties to the Agreement are each individual employee (called the "Eligible Employee") and IMRL. The consideration is stated in the Agreement to be "the mutual promises contained herein." The Agreement provides for payment to the employee of a 5% retention incentive and, in certain circumstances, severance pay. The Agreement also provides for the employee to release IMRL from liability arising out of any act or omission by IMRL occurring prior to the release, "including but not limited to the employee's employment or the termination of such employment." The Agreement also contains a number of general conditions including the arbitration clause at issue in this case, and section 4.2, the "No Enlargement of Employee Rights" section described above, which provides that the employee remains an "at will" employee and the Agreement does not give the employee the right to be retained in the services of IMRL.

An "employment contract" is a "contract between an employer and an employee in which the terms and conditions of employment are stated." *Black's Law Dictionary* 321 (7th ed. 1999). This does not describe the Agreement at issue in the present case. The terms of the Agreement do not relate to the terms or conditions of the plaintiffs'

---

[4]This is the only remaining issue in the case. The defendant argues at length that the plaintiffs are procedurally barred from raising this issue at this stage of the lawsuit, but the court declines to decide the case on this basis. Although the issue was asserted initially only in a footnote, and then arguably was waived, the issue nevertheless has been presented to the court from the early stages of the lawsuit. The arguments made by the plaintiffs in their earlier brief all were prefaced, albeit in footnotes, by the assertion that things would be different if the Agreement were found to be an employment contract.

The defendant also argues the arbitrator decided this issue in his rulings, and this court is bound by that decision. While it is clear this issue was presented to the arbitrator, *see* Doc. No. 58-4, pp. 22-24, it appears the arbitrator did not address the merits of the issue, but simply deferred to this court's order of June 14, 2004 (Doc. No. 16). *See* Doc. No. 62-3, p. 2. The issue now has been presented squarely to the court, and the court would be remiss in failing to address it.

[5]Presumably, there are fifteen separate agreements, one for each of the fifteen plaintiffs.

7

employment with IMRL, but to the rights and obligations of the plaintiffs and IMRL to each other if the plaintiffs continue their employment with IMRL or with a successor entity. The terms and conditions of the plaintiffs' employment with the defendant remained those of "at will" employees.

The defendant argues there was no "employment contract" simply because the plaintiffs were at-will employees. This argument is based on a faulty premise, as illustrated by the holding in *Durkin v. CIGNA Property & Casualty Corp.*, 942 F. Supp. 481 (D. Kan. 1996):

> In fact, an at-will employee does work under an employment contract, by which, at its most basic level, the employee promises to do a certain job and the employer promises payment therefor; the failure to fulfill either promise constitutes a breach of contract. . . . Employment at will is not a state of nature but a continuing contractual relation. Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract. All that is missing is a provision that gives the contract a fixed term or that entitles one or both parties to a specified amount of notice before the other party can cancel the contract without liability.

*Durkin*, 942 F. Supp. at 488. *See Pecoraro v. General Am. Life Ins. Co.*, 130 F. Supp. 2d. 1093, 1097 (E.D. Mo. 2001) ("an at-will employment arrangement has the hallmarks of a contract even if it is not an actual 'employment contract'"); *Lockhart v. Cedar Rapids Comm. Sch. Dist.*, 577 N.W.2d 845, 846 (Iowa 1998) (even at-will employee has remedy for damages when employee is terminated for reasons contrary to public policy, citing *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559-60 (Iowa 1988)). *See also Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 560 (M.D.N.C. 2004) (FAA applies to most employment contracts, including at-will employment contracts). Therefore, the defendant's argument is not determinative.

8

Innumerable courts from virtually every federal and state jurisdiction have considered what constitutes an "employment contract" in a variety of contexts. *See, e.g., Meier v. Family Dollar Servs., Inc.*, 443 F. Supp. 2d 1036, 1050 (N.D. Iowa 2006 (Jarvey, M.J.) (considering when an employee handbook constitutes a contract of employment; holding "party claiming existence of such a contract bears the burden of proving its existence," and "key to determining whether a contract has been created is whether a reasonable employee, when reading the handbook, would believe that the employer guaranteed him certain protections" (citations omitted)); *Feges v. Perkins Restaurants, Inc.*, 483 N.W. 2d 701, 707 (Minn. 1992) (also considering when employee handbook constitutes employment contract; holding question is one of fact for determination by trier of fact); *Leffingwell v. Lake City, Iowa*, 135 N.W.2d 536, 539 (Iowa 1965) (binding contract of employment must include "definiteness or certainty as to parties, nature and extent of service and compensation'"; quoting 35 Am. Jur. 451); *Bashford v. Slater*, 108 N.W.2d 474, 476 (Iowa 1961) (establishing five-part test for when employer-employee relationship is created for purposes of Iowa Workmen's Compensation Act). However, there are few cases that actually discuss the meaning of the phrase "contracts of employment" within the context of section 1 of the FAA, and the court has located no case directly on point.

The court finds instructive the decision of the Fifth Circuit Court of Appeals in *Terrebonne v. K-Sea Transportation Corp.*, 477 F.3d 271 (5th Cir. 2007). Terrebonne was a crew member aboard a K-Sea tug. He suffered an on-the-job injury requiring surgery to repair a hernia. Terrebonne and K-Sea entered into a written agreement (the "Release Agreement") that provided for a partial settlement of Terrebonne's claim, and also provided for arbitration of any future claims arising as a result of the shipboard injury. Terrebonne subsequently reinjured himself and underwent additional medical treatment. He filed a lawsuit against K-Sea, alleging he had been damaged due to K-Sea's negligence.

9

K-Sea moved to compel arbitration of Terrebonne's claims pursuant to the Release Agreement. Terrebonne resisted the motion, arguing, among other things, that because the arbitration agreement involved a seaman's employment contract, it was unenforceable under FAA § 1. The district court granted the motion to compel arbitration, finding the Release Agreement was "clearly separate and independent from Terrebonne's employment contract." 477 F.3d at 275 (internal quotation marks omitted). After some intermediate legal wrangling, the case eventually was arbitrated. The arbitrator denied Terrebonne's claims, but ordered K-Sea to pay the costs of arbitration. K-Sea moved to confirm the arbitrator's award. Terrebone opposed the motion, arguing, among other things, that enforcement of the arbitration award would violate public policy as evidenced by FAA § 1. Specifically, Terrebone argued the Release Agreement was "subsumed into his employment contract because the [Release Agreement] cover[ed] his maintenance and cure claims," which he asserted were "inseparable from a seaman's employment." 477 F.3d at 278-79. Terrebonne contended that "[b]ecause maintenance and cure are inseparable from a seaman's employment, . . . the [Release Agreement] necessarily constitute[d] part of his employment contract, such that the [Release Agreement fell] within [FAA] section one's exception." 477 F.3d at 279.[6] The district court granted K-Sea's motion to confirm the arbitration award, and Terrebone appealed.

The Fifth Circuit recognized that case law connects maintenance and cure to a seaman's employment contract. 477 F.3d at 279 (citations omitted). However, the court "clarified that maintenance and cure is an intrinsic part of the employment *relationship*, separate from the actual employment *contract*[.]" *Id.* (emphasis in original). Further, despite the fact that the Release Agreement stated K-Sea was obligated to pay maintenance and cure, the court found inclusion of this language did "not purport to change anything

---

[6] For a detailed discussion of the history, scope, and meaning of a shipowner's "maintenance and cure" duties, *see Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S. Ct. 930, 87 L. Ed. 1107 (1943).

10

regarding that obligation or regarding Terrebone's employment with K-Sea." 477 F.3d at 280. Accordingly, the court concluded the Release Agreement was not "subsumed into Terrebonne's employment contract, and [did] not fall under section one's exception to the FAA's coverage." *Id.*

There are obvious differences between *Terrebonne* and the present case. Unlike K-Sea's maintenance and cure obligations, the obligations assumed by IMRL in the Agreement were not an implied form of compensation that already existed by virtue of the plaintiffs' employment with IMRL. Instead, the parties' promises contained in the Agreement were new promises, predicated upon mutual agreement and consideration. Nevertheless, similar to the analysis in *Terrebonne*, the provisions of the Agreement did nothing to change the nature and extent of the plaintiffs' employment. The plaintiffs remained employees at-will. IMRL remained the party for whose benefit the work was performed, and IMRL maintained the right to control the work. IMRL also maintained the obligation to pay wages. And both the plaintiffs and IMRL maintained the right to terminate the employment relationship, IMRL for good cause and the plaintiffs for any reason. The Agreement constituted a completely new, and separate, contract that did not alter the employer-employee relationship between the parties. Although the Agreement may have induced the plaintiffs into remaining employed by IMRL for a longer period of time, the Agreement changed none of the terms and conditions of the plaintiffs' employment. The court therefore finds the Agreement is not a "contract of employment of . . . railroad employees," and it is not excepted from arbitration by FAA § 1.

11

For the foregoing reasons, the plaintiff's motion, Doc. No. 45, to vacate the arbitrator's award on unconscionability is **denied**, the defendant's motion to dismiss, Doc. No. 62, is **granted**, and this matter is **dismissed with prejudice**.[7]

**IT IS SO ORDERED.**

**DATED** this 4th day of September, 2007.

*Paul A. Zoss*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[7] Dismissal of this lawsuit with prejudice is not intended to preclude the plaintiffs from pursuing their claims in arbitration pursuant to the terms of the Agreement.

12